NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

The HUBBARD COMPANY, Respondent.

No. 81–1674.

United States Court of Appeals,
Sixth Circuit.

Argued Jan. 19, 1983.

Decided March 22, 1983.

Elliott Moore, Deputy Associate Gen. Counsel, Ralph Simpson (argued), N.L.R.B., Washington, D.C., for petitioner.

Donald M. Mewhort, Jr., Timothy C. McCarthy (argued), Toledo, Ohio, for respondent.

Before KENNEDY, JONES and CONTIE, Circuit Judges.

PER CURIAM.

The National Labor Relations Board petitions for enforcement of an order directing the Hubbard Company (Company) to bargain with Toledo Typographical Union No. 63, International Typographical Union, AFL–CIO (Union). The Company opposes enforcement on the grounds that the Union was improperly certified as the employees' bargaining representative. For the reasons stated below, we deny the Board's petition for enforcement.

I.

In April 1980, a representation election was held among the Company's production, maintenance and delivery employees at its Defiance, Ohio facility. The record indicates that all twenty-two eligible voters cast ballots. The final tally showed that eleven employees voted for the Union, ten opposed the Union, and one ballot—that of Steven Hall, son-in-law of the Company's president and majority stockholder—was challenged by the Union on the basis that he was either not an "employee" under section 2(3) of the National Labor Relations Act (Act), 29 U.S.C. § 152(3), or that his interests were more closely allied with management than with the unit employees. 29 U.S.C. § 159(b).

Since the challenged ballot could have affected the outcome of the election, the Regional Director conducted an administrative investigation pursuant to 29 C.F.R. § 102.69(c)(1). The Director's report indicated that Hall is the son-in-law of the president and majority stockholder of the Company, and that the contesting parties had stipulated before the election that Mrs. Hall was not an eligible voter because of her relationship to her father. At the time of the election, Mr. and Mrs. Hall worked four ten-hour days, beginning at 2:30 p.m. Monday through Thursday, running the binding equipment on the Company's second shift. The only other people who worked during the second shift were two janitorial employees. Before the Halls, no other employee on either shift had worked a 4-day, 10-hour work week. Thus, the married couple who previously ran the binding equipment on the second shift worked five eight-hour days. The report also indicated that all supervisors and first shift employees leave the Company's facility by 6:00 p.m. each evening, and thus the Halls work without supervision during approximately two-thirds of their work day.[1]

The Regional Director concluded that Hall did not share a community of interest with the other unit employees because of (1) Hall's family relationship with the Company's president and majority stockholder, (2) the Halls' unprecedented 4-day 10-hour work schedule, and (3) the Company's lack of supervision. Accordingly, the Director recommended that the Union be certified. The Company filed exceptions to the report and a supporting brief, which alternatively contended that the Regional Director's factual findings could not, as a matter of law, support a finding of special status in this case, and that the Board should order the Regional Director to hold a hearing to resolve other material issues of fact. 29 C.F.R. 102.69(f). The Board, however, adopted the Regional Director's Report and Recommendations without a hearing, and certified the Union as the exclusive representative of the unit employees.

The Company then refused to bargain with the Union. In December 1980, the Union filed an unfair labor practice charge which alleged that the Company violated

---

1. One supervisor is required to make a brief visit to the facility at 8:00 or 9:00 p.m. on the nights that the Halls are working.

section 8(a)(5) and (1) of the Act. The Company answered by denying that the Union had been elected by a majority of the bargaining unit employees. Thereafter, the general counsel filed a motion for summary judgment which alleged that the issues raised in the employer's answer had already been resolved in the representation proceeding, and thus there were no unresolved, material issues of fact. The Board granted the general counsel's summary judgment motion, and ordered the Company to bargain. The Board now seeks enforcement of its order from this court.

## II.

■ The question presented is whether Hall enjoyed a "special status" at the workplace which allied his interests with those of management. *Cherrin Corp. v. NLRB,* 349 F.2d 1001, 1004 (6th Cir.1965), *cert. denied,* 382 U.S. 981, 86 S.Ct. 557, 15 L.Ed.2d 471 (1966). Since the Company admits it refused to bargain with the Union, the Board's order should be enforced if its finding of special status is supported by substantial evidence on the record as a whole. 29 U.S.C. § 160(e); *Harlan # 4 Coal Co. v. NLRB,* 490 F.2d 117, 119, 125 (6th Cir.), *cert. denied,* 416 U.S. 986, 94 S.Ct. 2390, 40 L.Ed.2d 763 (1974); *NLRB v. Connecticut Foundry Co.,* 688 F.2d 871, 878 (2d Cir.1982). In prior cases, this court has held that a finding of special status cannot be based solely on the existence of a family relationship between the employee and employer. *Cherrin Corp.,* 349 F.2d at 1004; *NLRB v. Sexton,* 203 F.2d 940 (6th Cir.1953). Instead, such relationship can be considered only if the employee receives job-related benefits or other favorable working conditions on account of the relationship.[2] *Cherrin Corp.,* 349 F.2d at 1004–05; *see, e.g., NLRB v. Connecticut Foundry Co.,* 688 F.2d

871, 878–79 (2d Cir.1982); *NLRB v. Jackson Farmers Inc.,* 432 F.2d 1042, 1044–45 (10th Cir.1970), *cert. denied,* 401 U.S. 955, 91 S.Ct. 974, 28 L.Ed.2d 238 (1971); *Uyeda v. Brooks,* 365 F.2d 326, 329 (6th Cir.1966).

■ Notwithstanding the family relationship involved, the evidence of special status in this case consists of: (1) the Company's lack of supervision over Hall; and (2) the Halls' 4-day, 10-hour work week. While the general counsel correctly points out that the Halls worked without supervision during much of the second shift, the record indicates that *all* supervisors leave the facility by 6:00 p.m. each evening. Thus, the employees who previously ran the binding equipment on the second shift and the janitorial employees who currently work during the second shift were under no greater degree of supervision than the Halls. We therefore find no basis in the evidence for the Board's finding of special status due to the Company's lack of supervision.

■ The only other evidence of Hall's special status is his special work schedule. The record does not indicate the Company's reason for allowing Hall to work the special hours. Nevertheless, we hold that even if the schedule was established for Hall's convenience, this single instance of special treatment does not constitute substantial evidence of special status in this case.[3] A ten-hour, four-day work week is simply not so unusual in the workplace that, standing alone, it warrants Hall's exclusion from the bargaining unit. In this context, we note that the evidence of special status in this case is not nearly as persuasive as that presented in *Cherrin Corp. v. NLRB,* 349 F.2d 1001 (6th Cir.1965), *cert. denied,* 382 U.S. 981, 86 S.Ct. 557, 15 L.Ed.2d 471 (1966). In *Cherrin,* this court reluctantly deferred to the Board's determination that the em-

---

**2.** We acknowledge that other circuits have also employed "an expanded community of interest standard that permits the Board to exclude employees on the basis of family relationship—without regard to job-related factors"—provided the Board adheres to the guidelines set out in these decisions. *NLRB v. Caravelle Wood Products, Inc.,* 504 F.2d 1181, 1187 (7th Cir. 1974); *accord, NLRB v. H.M. Patterson & Son,*

*Inc.,* 636 F.2d 1014, 1017 (5th Cir.1981); *Linn Gear Co. v. NLRB,* 608 F.2d 791, 796 (9th Cir. 1979). This circuit, however, has never employed this standard in a "special status" employee case.

**3.** The record further indicates that Hall has received no special privileges regarding his wages or benefits.

ployee in question enjoyed a special status after finding that, unlike the other employees, (1) she was the daughter of the corporation's secretary, and also a niece of all the other officers and owners, (2) she was not required to punch a time clock, (3) no record was kept of her absences, and thus the employer's sick leave policy could not be applied to her, and (4) she was never reprimanded or penalized for tardiness. *Id.,* at 1005–07. Although the court did enforce the bargaining order, it referred to the Board's evidence as "flimsy" and "pretty thin," *Id.* at 1004, and hinted that the order would not have been enforced had the court heard the case *de novo.*

The record indicates that the Board summarily adopted the Regional Director's report in the certification proceeding, and thus found no unresolved, material issues of fact. 29 C.F.R. § 102.69(f). The general counsel also argued that there were no unresolved, material issues of fact in her motion for summary judgment during the subsequent unfair labor practice proceeding. Therefore, having accepted as true all evidence of special status contained in the Regional Director's report, we hold that on the facts of this case the Board's finding of special status is not supported by substantial evidence, and thus deny enforcement of the Board's order.