**ACTION AUTOMOTIVE, INC.,**
**Petitioner,**

v.

**NATIONAL LABOR RELATIONS**
**BOARD, Respondent.**

Nos. 82–1498, 82–1644.

United States Court of Appeals,
Sixth Circuit.

Argued Aug. 23, 1983.
Decided Sept. 30, 1983.

Stewart J. Katz (argued), Keller, Thoma, Schwarze, Schwarze, DuBay & Katz, Detroit, Mich., for petitioner.

Elliott Moore, Deputy Associate Gen. Counsel, N.L.R.B., Patrick Szymanski (argued) Washington, D.C., for respondent.

Before LIVELY and JONES, Circuit Judges, and RUBIN, Chief Judge.*

PER CURIAM.

This case is before the Court upon Action Automotive's petition to review and the NLRB's cross-application to enforce the Board's order finding a refusal to bargain in violation of Sections 8(a)(5) and (1) of the NLRA. Petitioner argues that the Board improperly disqualified Mildred and Diane Sabo, relatives of the Company's co-owners, from voting in the bargaining units which elected the union as their bargaining representative. Upon consideration of the issues presented by this appeal, we agree and deny enforcement of the Board's order.

Petitioner, Action Automotive Inc., ("the Company") sells auto parts and gasoline through a number of retail outlets. The Company is owned in equal shares by three brothers, Richard, Robert and James Sabo. As president, vice-president and secretary respectively, the three brothers make all of the Company's policy decisions and are actively involved in its daily operation. On May 29, 1981, the Company's "store and warehouse employees" (Unit A) and "office clerical employees" (Unit B) conducted a secret ballot union representation election. The store and warehouse employees of Unit A voted twenty to eighteen for the union, with one challenged ballot. The clerical employees of Unit B voted four to three to join the union, with five challenged ballots. The union challenges the votes of Mildred Sabo in Unit A and Diane Sabo of Unit B. Their votes are relevant to this appeal because the union's majority status hinges upon whether the NLRB properly ruled that they were ineligible to vote.

Diane Sabo is the wife of Richard Sabo, the Company's president. She works as a general ledger clerk in the Company's Corunna Road office, under the supervision of Office Manager Lochman. All clerical workers except Diane receive an hourly wage. Diane is paid $100 per week and is expected to work between twenty and twenty-five hours, depending on business needs. Unlike the other clericals in Unit B, she is not required to punch a time card; rather, she records her hours on a form which is submitted to Lochman. The Board found that all clerical employees except Diane have scheduled fifteen minute paid breaks, and an unpaid lunch break. Diane takes her breaks whenever she so decides. Nevertheless Diane has been a paid clerical employee at the Company and its predecessor for eleven years. She works in the same area as other clericals and performs clerical functions for less pay per hour than her co-workers. The testimony before the Board indicates that Diane's hours are flexible to accommodate family needs and health concerns. That flexibility is afforded other clerical workers as well.

Mildred Sabo is the mother of co-owners Richard, Robert and James Sabo. She resides with James Sabo and speaks to her sons daily. Mildred is a full-time cashier at the Company's South Saginaw street store. A senior member of the Company's cashiers, she earns $4.50 per hour. Other cashiers earn from $3.75 to $4.25 per hour. Mildred is supervised by store management and works in accord with the schedule posted and determined by that management. She records her time on a time card, while other employees punch a clock. In other respects,

---

* The Honorable Carl B. Rubin, United States District Court for the Southern District of Ohio, sitting by designation.

her working conditions and fringe benefits are similar to those of the other employees.

The question presented by these facts is whether Diane and Mildred Sabo enjoyed a "special status" at the work place which allied their interests with those of management. *NLRB v. Hubbard Co.,* 702 F.2d 634 (6th Cir.1983); *Cherrin Corp. v. NLRB,* 349 F.2d 1001 (6th Cir.1965), *cert. denied,* 382 U.S. 981, 86 S.Ct. 557, 15 L.Ed.2d 471 (1966). This Court has clearly held that a finding of special status cannot be based solely on the existence of a familiar relationship between employer and employee. *Cherrin,* 349 F.2d at 1004; *NLRB v. Sexton,* 203 F.2d 940 (6th Cir.1953). We have explicitly rejected an expanded "community of interest" standard, whereby employees may be excluded solely for family ties. *Hubbard,* 702 F.2d at 636, n. 2.

Rather familial ties can only be considered as evidence of a special status when the employee received job-related benefits or other favorable working conditions which flow from the relationship. *Hubbard,* 702 F.2d at 636; *Cherrin,* 349 F.2d at 1004–05. In *Cherrin,* this Court deferred to the Board's finding of a special status in a circumstance in which multiple benefits flowed to an employee by virtue of her familial relationship to management. The employee was the daughter of the corporation's secretary and the niece of all the other officers and owners. As a result of this relationship, she was not required to punch a time clock, she was not a participant in the company's sick leave policy, she was not accountable for absences and she was never disciplined for tardiness. Although the *Cherrin* court deferred to the Board's order finding a special status, we found evidence of a special status to be "flimsy" and "thin," stating that we would have ruled differently had the matter been before us *de novo.*

More recently, in *Hubbard* we did rule differently and denied enforcement of the Board's finding of a special status. In that case, the challenged ballot belonged to Steven Hall, the son-in-law of the company's president and majority stockholder. Hall and his wife worked four, ten-hour days. No other employee of the company had ever worked that type of a shift. Unlike all other employees, the Halls worked without supervision during approximately two-thirds of their day. The special shift was established for the Halls' convenience. On these facts, the *Hubbard* Court found evidence of a special status insufficient to support the Board's findings. We held that "even if the schedule was established for Hall's convenience, this single instance of a special treatment does not constitute substantial evidence of a special status in this case." 702 F.2d at 636.

The clear import of the *Hubbard* decision is that a familial tie together with an instance of special treatment does not warrant the legal conclusion of a "special status." We must decide therefore whether the facts presently before this Court provide greater indicia of a special status than those in *Hubbard.* After careful consideration of the record, we are unable to find sufficient evidence to support the finding of a "special status." The facts of the instant case are analogous to the facts in *Hubbard.* Diane Sabo's work schedule differed significantly from that of her fellow employees. She is paid on a weekly basis, while other employees are paid on an hourly basis. The breaks and flexibility afforded Diane follow from her weekly work schedule. She receives no special privileges regarding her wages. We cannot say conclusively why Diane's work schedule is different than that of other clerical workers. But, even if that work schedule were established for Diane's convenience, our holding in *Hubbard* makes clear that this single instance of a special treatment is insufficient evidence of a "special status."

Furthermore *Hubbard* mandates that Mildred Sabo, perhaps more clearly than Diane, does not enjoy a special status. Mildred's working conditions are nearly identical to those of the other cashiers. She receives a larger hourly wage in accordance with her senior status. The only factor of Mildred's special status is her family ties to the Company. Our decisions indicate that

such family ties alone are insufficient to establish "special status." *Hubbard,* 702 F.2d at 636; *Cherrin,* 349 F.2d at 1004–05. We conclude therefore that the Board's finding that Mildred and Diane Sabo enjoyed a special status so as to disqualify them from voting is not supported by substantial evidence on the record as a whole. *Harlan # 4 Coal Co. v. NLRB,* 490 F.2d 117, 119 (6th Cir.1974) *cert. denied,* 416 U.S. 986, 94 S.Ct. 2390, 40 L.Ed.2d 763 (1974).

Accordingly, enforcement of the Board's order is hereby DENIED.