# NATIONAL LABOR RELATIONS BOARD *v.* ACTION AUTOMOTIVE, INC.

No. 83–1416.   Argued October 29, 1984—Decided February 19, 1985

BURGER, C. J., delivered the opinion of the Court, in which BRENNAN, WHITE, MARSHALL, BLACKMUN, and POWELL, JJ., joined. STEVENS, J., filed a dissenting opinion, in which REHNQUIST and O'CONNOR, JJ., joined, post, p. 499.

*Norton J. Come* argued the cause for petitioner. With him on the briefs were *Solicitor General Lee, Deputy Solicitor General Wallace, Carter G. Phillips,* and *Linda Sher.*

*Stewart J. Katz* argued the cause and filed a brief for respondent.

CHIEF JUSTICE BURGER delivered the opinion of the Court.

We granted certiorari to decide whether the National Labor Relations Board may exclude from a collective-bargaining unit employees who are relatives of the owners of a closely held corporation that employs them, without a finding that the employees receive special job-related benefits.

## I

Respondent Action Automotive, Inc., is a retail automobile parts and gasoline dealer with stores in a number of Michigan cities. Action Automotive is a closely held corporation owned equally by three brothers, Richard, Robert, and James Sabo. The Sabo brothers are actively involved in the

daily operations of the business. They serve as the corporation's officers, make all policy decisions, and retain ultimate authority for the supervision of every department.

In March 1981, the Retail Store Employees Union, Local 40 (the Union), filed with the Board a petition requesting that a representation election be held among Action Automotive's employees. Action Automotive and the Union agreed to elections in two bargaining units—one consisting of employees at the company's nine retail stores, and the other comprising clerical employees at the company's headquarters. The elections were held on May 29, 1981, and the Union received a plurality of votes in each unit;[1] enough ballots were challenged by each side, however, to place the outcome of the elections in doubt. We are concerned only with the Union's challenge to the ballots of Diane and Mildred Sabo.

Diane Sabo is the wife of Action Automotive's president and one-third owner, Richard Sabo. She works as a general ledger clerk at the company's headquarters in Flint, Michigan. She resides with her husband and both work at the same office. Unlike other clerical workers, she works part time and receives a salary. She also is allowed to take breaks when she pleases, and she often spends her break in her husband's office.

Mildred Sabo is the mother of the three Sabo brothers who own and manage Action Automotive. She is employed as a full-time cashier at the company's store in Barton, Michigan. Mildred Sabo lives with James Sabo, secretary-treasurer of the corporation, and she regularly sees or telephones her other sons and their families. She earns 25 cents per hour more than any other cashier, but she is also one of the company's most experienced cashiers.

In light of these facts, the Board's hearing officer concluded that Diane Sabo's interests are different from those of other clerical employees in the company's headquarters,

---

[1] The vote in the unit consisting of retail store employees was 20–18; the vote in the clerical unit was 4–3.

and that Mildred Sabo's "interests are more closely aligned with management than with the employees of Action Automotive." App. to Pet. for Cert. 36a. He reached this conclusion without finding that Diane and Mildred Sabo enjoy special job-related benefits. Believing that such a finding was not a prerequisite to excluding the two women from the bargaining units, the hearing officer recommended that the Union's challenge to their ballots be sustained.

The Board adopted the hearing officer's recommendations[2] and, after all qualified votes were counted, certified the Union as the exclusive bargaining representative for the two units. When Action Automotive refused to bargain, the Union filed charges with the Board. The Board, relying on its earlier certification decision, found that Action Automotive had violated §§ 8(a)(1) and (5) of the National Labor Relations Act (Act), 61 Stat. 140, 141, 29 U. S. C. §§ 158(a)(1) and (5), and ordered the company to bargain with the Union. 262 N. L. R. B. 423 (1982).

The United States Court of Appeals for the Sixth Circuit denied enforcement of the Board's order. 717 F. 2d 1033 (1983). The panel, apparently feeling bound by the Circuit's prior decisions, see, e. g., NLRB v. Hubbard Co., 702 F. 2d 634 (1983), held that the Board had no authority under § 9(b) of the Act to exclude employees from a bargaining unit based solely on their close family relationship with those who own and operate the business. The court held that an employee's family ties may be a factor justifying exclusion from a bargaining unit only "when the employee receive[s] job-related benefits or other favorable working conditions which flow from the relationship." 717 F. 2d, at 1035. Under this standard, the court concluded that there was insufficient evidence that Diane and Mildred Sabo enjoy special job-related

---

[2] The Board, disagreeing with the hearing officer, found that Diane Sabo does enjoy special job-related benefits. The Court of Appeals for the Sixth Circuit set aside this finding, and the Board, for purposes of review in this Court, no longer rests its decision on this ground.

benefits, and that the Board erred in excluding them from the units.

The Sixth Circuit's holding conflicts with the decisions of other Circuits[3] and restricts the Board's statutory authority to define bargaining units. We granted certiorari, 466 U. S. 970 (1984), and we reverse.

## II

Section 9(b) of the Act vests in the Board authority to determine "the unit appropriate for the purposes of collective bargaining." 61 Stat. 143, 29 U. S. C. § 159(b). The Board's discretion in this area is broad, reflecting Congress' recognition "of the need for flexibility in shaping the [bargaining] unit to the particular case." *NLRB* v. *Hearst Publications, Inc.*, 322 U. S. 111, 134 (1944). The Board does not exercise this authority aimlessly; in defining bargaining units, its focus is on whether the employees share a "community of interest." See *South Prairie Construction Co.* v. *Operating Engineers*, 425 U. S. 800, 805 (1976) *(per curiam);* 15 NLRB Ann. Rep. 39 (1950). A cohesive unit—one relatively free of conflicts of interest—serves the Act's purpose of effective collective bargaining, *Pittsburgh Plate Glass Co.* v. *NLRB*, 313 U. S. 146, 165 (1941), and prevents a minority interest group from being submerged in an overly large unit, *Chemical Workers* v. *Pittsburgh Plate Glass Co.*, 404 U. S. 157, 172–173 (1971).

The Board has long hesitated to include the relatives of management in bargaining units because "their interests are sufficiently distinguished from those of the other employees." *Louis Weinberg Associates, Inc.*, 13 N. L. R. B. 66, 69 (1939). From the earliest days of the Wagner Act, ch. 372, 49 Stat. 449 *et seq.*, until 1953, the Board automatically excluded close relatives of a manager or owner of a closely

---

[3] See *NLRB* v. *H. M. Patterson & Son, Inc.*, 636 F. 2d 1014 (CA5 1981); *Linn Gear Co.* v. *NLRB*, 608 F. 2d 791 (CA9 1979); *NLRB* v. *Caravelle Wood Products, Inc.*, 504 F. 2d 1181 (CA7 1974).

held company. See, *e. g.*, *Jerry and Edythe Belanger*, 32 N. L. R. B. 1276, 1279, and n. 4. (1941). This bright-line approach was abandoned, however, in *International Metal Products Co.*, 107 N. L. R. B. 65, 67 (1953), and now the Board considers a variety of factors in deciding whether an employee's familial ties are sufficient to align his interests with management and thus warrant his exclusion from a bargaining unit.[4]

For instance, a relevant consideration is whether the employee resides with or is financially dependent on a relative who owns or manages the business; such an employee is typically excluded from the unit. See, *e. g.*, *Pandick Press Midwest, Inc.*, 251 N. L. R. B. 473, 473–474 (1980). The greater the family involvement in the ownership and management of the company, the more likely the employee-relative will be viewed as aligned with management and hence excluded.[5] See factors listed in *NLRB* v. *Caravelle Wood Products, Inc.*, 466 F. 2d 675, 679 (CA7 1972). The Board, of course, is always concerned with whether the employee receives special job-related benefits such as high wages or favorable working conditions. See, *e. g.*, *Holthouse Furniture Corp.*, 242 N. L. R. B. 414, 415–416 (1979). When other criteria satisfy the Board that the employee-relative's interests are aligned with management, however, he may be excluded from the unit even though he enjoys no special job-related benefits. *E. g.*, *Marvin Witherow Trucking*, 229 N. L. R. B. 412, 412–413 (1977).

Our review is limited to whether the Board's practice of excluding some close relatives who do not enjoy special

---

[4] The Board's policy is not undermined by the fact that it has modified and refined its position; an agency's day-to-day experience with problems is bound to lead to adjustments. See *NLRB* v. *Bell Aerospace Co.*, 416 U. S. 267, 294–295 (1974).

[5] Compare *Parisoff Drive-In Market, Inc.*, 201 N. L. R. B. 813 (1973) (excluding children of corporation's vice president and significant shareholder), with *Pargas of Crescent City, Inc.*, 194 N. L. R. B. 616 (1971) (including wife of local manager with no ownership interest).

job-related benefits has a "reasonable basis in law." *NLRB v. Hearst Publications, Inc., supra,* at 131. In reviewing Board decisions, we consistently yield to the Board's reasonable interpretations and applications of the Act, see *NLRB v. City Disposal Systems, Inc.,* 465 U. S. 822, 829–830 (1984); *Sure-Tan, Inc. v. NLRB,* 467 U. S. 883, 891 (1984). Indeed, the Board's orders defining bargaining units are "rarely to be disturbed." *Packard Motor Car Co. v. NLRB,* 330 U. S. 485, 491 (1947).

The Board's policy regarding family members, although not defined by bright-line rules, is a reasonable application of its "community of interest" standard.[6] Close relatives of management, particularly those who live with an owner or manager, are likely to "get a more attentive and sensitive ear to their day-to-day and long-range work concerns than would other employees." *Parisoff Drive-In Market,* 201 N. L. R. B. 813, 814 (1973). And it is reasonable for the Board to assume that the family member who is significantly dependent on a member of management will tend to equate his personal interests with the business interests of the employer. *Ibid.* The very presence at union meetings of close relatives of management could tend to inhibit free expression of views and threaten the confidentiality of union attitudes and voting. See generally *ibid.; NLRB v. Hendricks County Rural Electric Membership Corp.,* 454 U. S. 170, 193–194 (1981) (POWELL, J., concurring in part and dissenting in part).

It can be argued that the Board's policy is overbroad—that excluding from bargaining units only those family members who receive special job-related benefits adequately serves the Act's objectives. However, we do not make labor policy under § 9(b); Congress vested that authority in the Board,

---

[6] At least since *International Metal Products Co.,* 107 N. L. R. B. 65 (1953), the Board has not excluded an employee simply because he was related to a member of management.

which brings its extensive experience in the administration of the Act to bear on questions of unit determinations. See *NLRB* v. *Hendricks County Rural Electric Membership Corp.*, *supra*, at 190; *Packard Motor Car Co.* v. *NLRB*, *supra*, at 492–493. We do not require "mathematical precision," *NLRB* v. *Hearst Publications, Inc.*, *supra*, at 133, and are not prepared to second-guess the Board's informed judgment that a bargaining unit's community of interest may be diluted by circumstances other than divergent job-related benefits.

The Board's decision to exclude some family members is not inconsistent with the fundamental structure or policies of the Act. Congress knows how to limit the Board's discretion to define collective-bargaining units. For example, § 9(c)(5) of the Act states that "the extent to which the employees have organized shall not be controlling" in determining whether a unit is appropriate. 29 U. S. C. § 159(c)(5). By contrast, there is no express direction that the Board define bargaining units only by reference to job-related benefits such as wages and working conditions. We are not authorized to bind the Board in ways not mandated by Congress.

Action Automotive's extensive reliance on § 2(3) of the Act is misplaced. Section 2(3) excludes from the Act's definition of "employee" "any individual employed by his parent or spouse."[7] 61 Stat. 138, 29 U. S. C. § 152(3). Such a person is completely outside the scope of the statute and may not invoke its protection. See, *e. g.*, *Campbell-Harris Electric, Inc.*, 263 N. L. R. B. 1143, 1143–1144, enf'd, 719 F. 2d 292 (CA8 1983). Family members who fall within the Act's broad definition of "employee," however, have no statutory

---

[7] In the context of corporations, the Board has limited the § 2(3) exclusion to the children or spouses of an individual with at least a 50% ownership interest. See *Cerni Motor Sales, Inc.*, 201 N. L. R. B. 918 (1973). The Board's decision in this case, therefore, is not premised on the view that Diane and Mildred Sabo are not "employees" within the meaning of § 2(3).

right to be included in collective-bargaining units under § 9(b). The Board is free to exclude from bargaining units persons who are statutory "employees" otherwise protected by the Act.[8] See, e. g., *Hendricks County Rural Electric Membership Corp.*, *supra*, at 190.

Nor does the Board's policy of excluding close relatives of management without a showing of special job-related benefits run afoul of the Act's mandate that the Board remain "wholly neutral" as between the contending parties in representation elections, see *NLRB* v. *Savair Mfg. Co.*, 414 U. S. 270, 278 (1973). Strictly speaking, the Board does not exclude a family member from a bargaining unit because he is likely to vote against the union. Rather the family member is excluded, if at all, because the Board determines on the basis of objective factors that he lacks common interests with fellow employees who are not so related. In some cases the Board's policy may have the effect of favoring union representation; however, a disparate impact does not violate the principle of neutrality. Indeed, virtually every Board decision concerning an appropriate bargaining unit—e. g., the proper size of the unit—favors one side or the other.

The Board, in applying its general policy to the facts of this case, did not abuse its discretion. Diane Sabo resides with her husband, the president and one-third owner of Action Automotive; Mildred Sabo, the mother of the three owners, lives with one of her sons. All three owners are closely related and actively involved in running the business on a day-to-day basis. Diane Sabo works at the same office with her husband and occasionally takes her coffeebreaks in his office. Mildred Sabo has daily contacts with her sons. Certainly their participation in the collective-bargaining units would be viewed with suspicion by other employees. On these facts, the Board could reasonably conclude that Diane and Mildred Sabo's interests are more likely to be aligned with the busi-

---

[8] The Court of Appeals implicitly recognized as much by noting that employee-relatives may be excluded from a unit if they receive job-related privileges.

ness interests of the family than with the interests of the employees.

We hold that the Board did not exceed its authority in excluding from collective-bargaining units close relatives of management, without a finding that the relatives enjoy special job-related privileges.   The judgment of the Court of Appeals is

*Reversed.*

JUSTICE STEVENS, with whom JUSTICE REHNQUIST and JUSTICE O'CONNOR join, dissenting.

In my opinion, bargaining unit determinations should be based on job characteristics and not on an employee's opinion about unions.   Antiunion sentiment may be based on religious views, political convictions, individual respect or hostility, or family considerations.   If the characteristics of an employee's job are the same as those of pro-union employees, that employee has the same right to membership in the bargaining unit as a union official or his wife.

The majority's decision prevents the two employees involved in this litigation from participating in the decision to choose or reject representation solely because the extent of their family relations indicates that they are likely to be pro-management and hostile to union representation.   In § 2(3) of the Act,[1] however, Congress has already offered its view of the significance of family relationships for federal labor policy.   Except for the children or spouses of sole proprietors, partners, and majority shareholders,[2] family members related to owners or management personnel are entitled to participate as any other "employee" in the system of labor relations established by the Act.

---

[1] "The term 'employee' . . . shall not include . . . any individual employed by his parent or spouse . . . ."   29 U. S. C. § 152(3).

[2] Construing § 2(3), the Board has held that such persons are not "employees" covered by the Act.   *Cerni Motor Sales, Inc.,* 201 N. L. R. B. 918 (1973); *Foam Rubber City #2 of Florida, Inc.,* 167 N. L. R. B. 623, 623–624 (1967).

During the period between 1935 and 1947 a policy of excluding pro-management employees from bargaining units might have been consistent with provisions of the Wagner Act which emphasized the employees' right to organize.[3] Since the Taft-Hartley Act of 1947,[4] however, § 7 of the Act[5] has provided equal protection for the employee's right *not* to join a union as for the right to support a union. In *NLRB* v. *Savair Manufacturing Co.*, 414 U. S. 270 (1973), the Court emphasized the significance of this language:

> "Any procedure requiring a 'fair' election must honor the right of those who oppose a union as well as those who favor it. The Act is wholly neutral when it comes to that basic choice. By § 7 of the Act employees have the right not only to 'form, join, or assist' unions but also the right 'to refrain from any or all of such activities.' 29 U. S. C. § 157." *Id.*, at 278.

---

[3] Section 9(b) of the Wagner Act provided that the Board, in making unit determinations should "insure to employees the full benefit of their right to self-organization and to collective bargaining." National Labor Relations Act § 9(b), 49 Stat. 453. The Board interpreted this language as a mandate to promote union organization: "Wherever possible, it is obviously desirable that, in a determination of the appropriate unit, we render collective bargaining of the Company's employees an immediate possibility." *Botany Worsted Mills*, 27 N. L. R. B. 687, 690 (1940). See *NLRB* v. *Metropolitan Life Insurance Co.*, 380 U. S. 438, 441 (1965). During this same period, the Board adopted a regular policy of automatically excluding family members from bargaining units. See, *e. g.*, *Louis Weinberg Associates, Inc.*, 13 N. L. R. B. 66, 69 (1939) ("son and daughter of the president and vice president of the Company" excluded from bargaining unit "where, as here, the only union involved desires their exclusion").

[4] Labor Management Relations Act, 1947, § 101, 61 Stat. 136.

[5] "Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, *and shall also have the right to refrain from any or all of such activities . . . .*" 29 U. S. C. § 157 (emphasis added).

Although the Board has broad "discretion to define collective-bargaining units," *ante,* at 497, § 9(b) of the Act now requires that such decisions shall "assure to employees the fullest freedom in exercising the rights guaranteed by this [Act]." 29 U. S. C. § 159(b). The pro-union rationale of today's decision is fundamentally inconsistent with "the statutory right of employees to resist efforts to unionize a plant." *NLRB* v. *Savair Manufacturing Co.,* 414 U. S., at 280.

To be sure, the majority purports to rely on "objective factors" in determining whether the relative "lacks common interests with fellow employees who are not so related," *ante,* at 8, but in practice such persons will not "be identifiable by any standard other than probable opposition to the union at election time." *NLRB* v. *Caravelle Wood Products, Inc.,* 504 F. 2d 1181, 1189 (CA7 1974) (Stevens, J., concurring). The community of interests standard ordinarily applied by the Board to bargaining unit determinations is directed to the nature of the employee's job and the existing terms and conditions of his employment.[6] Likewise, confidential employees are excluded from bargaining units when "in the course of [their] employment" they gain access to confidential information concerning labor relations. *NLRB* v. *Hendricks County Rural Electric Membership Corp.,* 454 U. S. 170, 171 (1981).[7] In contrast, the Court's "expanded community of interest standard"[8] for determining a relative's

---

[6] See *Chemical Workers* v. *Pittsburgh Plate Glass Co.,* 404 U. S. 157, 172–173 (1971); *Kalamazoo Paper Box Corp.,* 136 N. L. R. B. 134, 137 (1962). See generally R. Gorman, Labor Law 68–74 (1976).

[7] Cf. *NLRB* v. *Yeshiva University,* 444 U. S. 672, 682 (1980) ("judicially implied exclusion [from the Act] for 'managerial employees' who are involved in developing and enforcing employer policy"). Moreover, the explicit instructions of Congress in § 2(3) limit the authority of the Court and the Board to imply additional exclusions in this context. See nn. 1 and 2, *supra; NLRB* v. *Sexton,* 203 F. 2d 940 (CA6 1953) *(per curiam).*

[8] *NLRB* v. *Caravelle Wood Products, Inc.,* 504 F. 2d 1181, 1187 (CA7 1974).

right to participate in the bargaining unit inquires into matters of personal life that are no more relevant to federal labor policy than the employee's eating and recreational habits or political views.

If the Board's bargaining unit determinations are not to be made on the basis of ill-concealed indicators of the employee's views on the virtues of union representation,[9] employees who are relatives of owners and management must only be excluded from the unit if their family relationship has resulted in special privileges in the workplace.[10] Except under those circumstances, I seriously doubt whether the employees at Action Automotive, Inc.—especially those who oppose

---

[9] "Frequently, [unit] determinations, like the drawing of election districts in other contexts, have been the decisive factor in determining whether there would be any collective bargaining at all in a plant or enterprise. Unions and employers have sought to gerrymander accordingly." B. Meltzer, Labor Law 311 (2d ed. 1977). In this context, "virtually every Board decision . . . favors one side or the other," *ante*, at 498, and the Board must be especially circumspect to avoid reliance on *illegitimate* factors in determining the size of the election unit. In at least one case, an Administrative Law Judge explicitly relied on relatives' pro-union sentiments to include them in the bargaining unit over the employer's objection. *Trash Removers, Inc.*, 257 N. L. R. B. 945, 946 (1981) ("The basic theory underlying those decisions in which the Board has excluded relatives of the boss is that they are shown, by the record, to be aligned with management, as distinguished from being antimanagement or prounion. That is why it is always the union that requests their exclusion"), order adopted by the Board, *id.*, at 945. See also Pet. for Cert. 11 (relatives' access to management "lessens the likelihood that they would vote in favor of union representation").

[10] See *International Metal Products Co.*, 107 N. L. R. B. 65, 67 (1953) ("We are convinced that the mere coincidence of a family relationship between an employee and his employer does not negate the mutuality of employment interest which an individual shares with fellow employees, absent evidence that because of such relationship he enjoys a special status which allies his interests with those of management"), overruled in *Foam Rubber City #2 of Florida, Inc.*, 167 N. L. R. B., at 624, n. 10. See also *NLRB* v. *Hubbard Co.*, 702 F. 2d 634, 636 (CA6 1983); *Cherrin Corp.* v. *NLRB*, 349 F. 2d 1001, 1004 (CA6 1965), cert. denied, 382 U. S. 981 (1966); *NLRB* v. *Sexton*, 203 F. 2d, at 940.

organization of the unit by the union—would view "with suspicion," *ante*, at 498, the inclusion of the two relatives here. The Board does not contest the Court of Appeals' rejection of its factual finding that the two relatives "enjoyed a special status so as to disqualify them from voting." 717 F. 2d 1033, 1036 (CA6 1983) *(per curiam)*. Thus, no legitimate reason has been established to exclude them from the bargaining unit.

I respectfully dissent.