QUALITY INN WAIKIKI, Petitioner,

v.

NATIONAL LABOR RELATIONS
BOARD, Respondent.

NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

QUALITY INN WAIKIKI, Respondent.

Nos. 85–7031, 85–7153.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 12, 1985.

Decided March 4, 1986.

Anna M. Elento-Sneed, Barry W. Marr, Honolulu, Hawaii, for petitioner.

Susan Williams, Washington, D.C., for respondent.

Before GOODWIN, NELSON and CAN-
BY, Circuit Judges.

NELSON, Circuit Judge:

The Quality Inn Waikiki Hotel ("Quality
Inn") petitions for review of a decision of
the National Labor Relations Board
("NLRB" or "Board") ordering Quality Inn
to cease its refusal to bargain in violation
of Sections 8(a)(1) and (a)(5) of the National
Labor Relations Act ("NLRA"), 29 U.S.C.
§ 158(a)(1), (5) (1982). Quality Inn admits
its refusal to bargain with the Culinary and
Service Workers Union, Local 555, AFL–
CIO ("Local 555"), but argues that Local
555 should not have been certified because
of a disqualifying conflict of interest. We
have jursidiction under 29 U.S.C. § 160(e, f)
(1982), and we grant the NLRB's cross-ap-
plication for enforcement.

## FACTUAL AND
## PROCEDURAL HISTORY

This case revolves around a complex rela-
tionship among Arthur Rutledge, his non-
profit corporation, his son Anthony, two
hotels, an International Union, and two Lo-
cals affiliated with the International. The
events surrounding this relationship, all oc-
curring in Hawaii, are not in dispute.

In 1951, Arthur Rutledge founded Unity
House as a nonprofit corporation intended
to benefit all present and past members
and friends of labor. Arthur is, and al-
ways has been, the President of Unity
House. In 1957, Unity House constructed
a building "to provide offices and adminis-
trative services for Unity House and other
labor organizations." A loan from the Ho-
tel Restaurant Employees and Bartenders
Union Local 5 ("Local 5"), an affilliate of
the Hotel Restaurant Employees and Bar-
tenders International Union, AFL–CIO
("HERE International"), helped finance
this construction. Local 5 located its of-
fices in this building after construction.

In 1972, Arthur and Unity House built
the Waikiki Marina Hotel in order to pro-
vide income to Unity House. The Waikiki
Marina voluntarily recognized Local 5 as

the collective bargaining representative of
certain of its employees in October 1973.
At that time, Arthur Rutledge was the
Chief Executive Officer of Local 5, and a
Vice President of HERE International. In
light of Arthur's relationship to both Local
5 and the Waikiki Marina, and Local 5's
loan to Unity House, the ILWU Local 142
filed unfair labor practice charges in re-
sponse to this voluntary recognition. The
parties reached a settlement agreement
which prohibited the Waikiki Marina from
recognizing Local 5 until Local 5 had di-
vested itself of all management control
over the hotel.

HERE International chartered the Culi-
nary and Service Workers Union, Local
555, AFL–CIO ("Local 555") in 1974.
Twenty-five applicants, all former Local 5
members, signed the charter petition.
HERE International appointed Anthony
Rutledge, Arthur's son, as Local 555's Ad-
ministrative Agent. At the same time, An-
thony was a Vice President of Local 5. In
its early years, Local 555 also located its
offices in the Unity House building, but did
not pay rent. Local 5 provided Local 555
with bookkeeping, secretarial and tele-
phone services.

The Waikiki Marina voluntarily recog-
nized Local 555 in August 1974, prompting
a reaction similar to that surrounding the
voluntary recognition of Local 5. Proceed-
ing on the theory that Local 555 and Local
5 were alter egos, the ILWU Local 142
filed unfair labor practice charges. The
parties again reached a settlement agree-
ment in which "the Waikiki Marina agreed
to cease recognizing Local 5 and/or Local
555 ... until said labor organization, their
agents, officers, and representatives, have
divested themselves of all management
control over the Waikiki Marina...."[1]

HERE International placed Locals 5 and
555 under trusteeship in late 1978 or early
1979, appointing Joseph Belardi as trustee
and Anthony Rutledge his assistant. In
April 1979, HERE ordered Anthony to turn
over all of his duties regarding Local 555,

---

1. The Ninth Circuit enforced the NLRB's order   February 11, 1976, Civil No. 75–3613.

including those of assistant trustee, to Belardi. In January 1980, after dissolution of the trusteeship, Local 5's newly-elected President fired both Arthur and Anthony from their positions with Local 5, and moved Local 5 out of the Unity House building. Arthur Rutledge resigned his position as a HERE International Vice President in January 1981, and his only remaining union position apparently was as President Emeritus of Local 5. Subsequently HERE International appointed Anthony Rutledge as its Vice President. Thus, he no longer held any position in Local 5 or Local 555, but was a Vice President of HERE, sat on its Executive Board, and was its organizer for the State of Hawaii.

August 3, 1979, after Local 555 elected new officers, it petitioned to represent the employees of petitioner, the Quality Inn Hotel. Pursuant to a stipulation executed by Quality Inn and Local 555, the NLRB held an election December 30, 1980, in which 64 employees voted for representation by Local 555, and only 24 voted against it. Among Quality Inn's objections to the election was that Local 555 and its alter ego Local 5 either own or effectively control the Waikiki Marina, a direct competitor of the Quality Inn. This involvement, Quality Inn claimed, creates for Local 555 a disqualifying conflict of interest. The Hearing Officer rejected this claim, and the NLRB agreed, certifying Local 555 as a bargaining representative on December 6, 1982.

Following this certification, Quality Inn refused to bargain with Local 555. Local 555 filed an unfair labor practice charge January 17, 1983, and the NLRB issued a complaint February 28, 1983. Quality Inn admitted its refusal to bargain, but claimed that Local 555's certification was improper. The NLRB, refusing to relitigate the conflict of interest question because Quality Inn presented no relevant new evidence, granted summary judgment in favor of Local 555 on September 17, 1984.

Quality Inn filed this timely petition for review January 17, 1985, and the Board filed its cross-application for enforcement March 20, 1985.

## STANDARD OF REVIEW

We will enforce the Board's order if the Board correctly applied the law and if substantial evidence in the record viewed as a whole supports the Board's findings of fact. *NLRB v. Southern California Edison Co.,* 646 F.2d 1352 (9th Cir.1981). We yield to the Board's reasonable interpretation and application of the Act. *NLRB v. Action Automotive, Inc.,* — U.S. —, 105 S.Ct. 984, 988, 83 L.Ed.2d 986 (1985).

## DISCUSSION

■ In assessing a conflict of interest claim, we look to "those key powers which a [L]ocal bargaining agent must be able to exercise with undivided loyalty if it is to engender confidence at the bargaining table." *NLRB v. David Buttrick Co.,* 361 F.2d 300, 307 (1st Cir.1966). Chief among these powers is the Local's ability to disregard the advice of the International and to conclude collective bargaining negotiations independently. *Id.* at 306–07. The resisting employer need not show that the Local has, in fact, abused its trust; it is sufficient to show that the Local has sufficient power and temptation to do so. *Id.*

■ However, in light of the strong policy favoring the right of employees to have a bargaining representative of their own choosing, an employer who refuses to bargain with an elected representative has "a considerable burden ... to come forward with a showing that the danger of a conflict of interest interfering with the collective bargaining process is clear and present." *NLRB v. David Buttrick Co.,* 399 F.2d 505, 507 (1st Cir.1968). Furthermore, the NLRB has "considerable discretion in conducting elections and resolving disputes concerning representation." *NLRB v. Pinkerton's, Inc.,* 621 F.2d 1322, 1324 (6th Cir.1980). Due to its expertise, the NLRB is peculiarly qualified to assess a Local's motivation in representing employees. *NLRB v. H.P. Hood, Inc.,* 496 F.2d 515, 519 (1st Cir.1974). Thus, we will

not second-guess the Board's decision regarding disqualifying conflicts of interest so long as substantial evidence supports it. *See NLRB v. Action Automotive, Inc.,* — U.S. —, 105 S.Ct. 984, 989, 83 L.Ed.2d 986 (1985) (refusal to second-guess Board's informed judgment that employees excluded from bargaining unit due to familial relationship with employer). The legality of Quality Inn's conduct is judged in light of the situation as it existed when Quality Inn refused to bargain. *H.P. Hood, Inc.,* 496 F.2d at 518. Since Quality Inn admits its refusal to bargain, substantial evidence supports the Board's order if the Board properly certified Local 555. *Pinkerton's, Inc.,* 621 F.2d at 1325.

## A. Control and Influence By Arthur Rutledge

Quality Inn first argues that the combination of Anthony Rutledge's power over Local 555 and his familial relationship with Arthur Rutledge disqualifies Local 555 from representing Quality Inn employees. It claims that there is an inherent familial allegiance between Anthony and his father Arthur, as evidenced by parallel career paths, a continuous and close relationship, and use of their positions to provide each other with special benefits. Through the combination of this allegiance and Anthony's positions with HERE International, Quality Inn concludes that Anthony has "sufficient power and temptation to use his position to benefit his father, who operates a competitor of Quality Inn, when negotiating on behalf of Local 555...."

The Hearing Officer ("H.O."), after noting the heavy burden on Quality Inn to establish a disqualifying conflict of interest, rejected this argument. As to Anthony's control over Local 555, the H.O. stated that "[t]he record is uncontroverted that the chief executive officer of Local 555 is free to accept or reject advice from Anthony Rutledge." As to the inherent allegiance between Anthony and Arthur, the H.O. found "no evidence sufficient to establish that Anthony ... is subject to the

control of his father. Nor does the record contain any evidence to suggest that Anthony ... will take his father's interests into account should he be called by Local 555 to assist in negotiating [a] collective bargaining agreement...."

Substantial evidence supports these findings.[2] Before a hearing officer, Anthony testified that he has not had control or authority over Local 555 since HERE International removed him as administrative agent in 1979. He also testified that he plays no part in the performance of the duties and responsibilities of Local 555's executive officers, giving them assistance and advice only if asked. Thus, Anthony stated, Local 555's officers have complete autonomy, and are free to ignore any advice or assistance he might give.

The testimony of other witnesses corroborates that of Anthony. Frank Rutgers, Jr., past-President of Local 555, testified that Anthony had no control, supervision or authority over the running of Local 555. Rutgers stated that he had not taken orders from Anthony in any way since 1979, when Anthony was removed from his job as an officer of Local 555. JoAnn Ferreira, Secretary-Treasurer of Local 555, testified that Anthony assists in negotiations for Local 555 because of his knowledge of the employers and their backgrounds. She also stated that only employees and officers can finalize contracts, and that Anthony has never signed a contract, hired employees, or fired employees for Local 555, or been compensated by Local 555 for his work. Finally, William Kurch, a business agent and organizer for Local 555, testified that Local 555 asked Anthony to assist in negotiations because of his familiarity with the hotel industry. Kurch also testified that Local 555's officers prepared any contract proposals Anthony presented on Local 555's behalf.

The testimony does not support the claim that Anthony and Arthur used their respective positions to provide each other with "special benefits." For instance, Quality

---

**2.** We review the H.O.'s findings of fact because the Board adopted those findings.

Inn claims that Arthur procured a reduced rate for Anthony at the Waikiki Marina. However, according to Hugh Menefee, Jr., manager of the Waikiki, Anthony received the same discount available to all of those who, like Anthony, were renting on a monthly basis. Menefee also stated that Anthony did not get special privileges or discounts in the hotel restaurant.

■ Thus, substantial evidence supports the Board's decision that Local 555 should not be disqualified because of its relationship with Anthony. The testimony supports the finding that Anthony, through HERE International, did not have sufficient power to direct Local 555. *Cf. NLRB v. H.P. Hood, Inc.*, 496 F.2d 515, 519 (1st Cir.1974) (powers of International limited and possibility of its intervening in local bargaining remote). This finding distinguishes this case from *Harlem River Consumers Cooperative, Inc.*, 191 NLRB 314, 317 (1971), in which the person with the alleged conflict of interest was a "business agent … with 'exclusive control or jurisdiction over [the collective bargaining negotiations in] the Harlem area,'" and the overseer of contract execution and grievance processing. Quality Inn has failed to meet its considerable burden of showing that Local 555 lacks the autonomy necessary to rebut the conflict of interest claim.

**B. Relationship Between Local 5 and Local 555**

Quality Inn's second argument centers on the relationship between Local 5 and Local 555. Quality Inn claims that "Local 555 is the 'illegitimate child' of Local 5, created in direct response to the problems Local 5 encountered when it attempted to gain recognition as bargaining representative for Quality Inn employees."[3] Quality Inn points to the fact that 25 former members of Local 5 signed Local 555's charter petition, and to the various administrative services provided by Local 5 to Local 555. In addition, Quality Inn relies on the fact that both Locals are "subservient" to HERE International. From this complex of relationships, Quality Inn concludes that there is "an innate and proximate danger that HERE International may exert pressure upon Local 555 to take action adverse to or refrain from taking action favorable to Quality Inn employees in order to protect Local 5's loans to Unity House."

The H.O. rejected this argument, stating:

[I]t is uncontroverted that since July 1979, Local 555 and Local 5 have had separate offices and that Local 555's elected officials have run the local on a day-to-day basis. The record contains no evidence to suggest [that] any official of Local 5 has exercised or attempted to exercise any authority over Local 555 during this period. In these circumstances I am compelled to conclude that Local 5 and Local 555 are separate and distinct labor organizations. The mere fact that both locals are members of the same international union does not compel a different conclusion.

■ Substantial evidence supports these findings. Arthur Rutledge testified that "Local 555 is an organization … separate and apart from Local 5." Contrary to Quality Inn's assertion regarding the creation of Local 555, Anthony Rutledge testified that HERE International chartered Local 555 because of a perceived need to organize services industries and restaurants in smaller hotels not organized by Local 5. Indeed, it appears that Local 5 and Local 555 have become rivals, not allies; Local 5's complaint arising out of a jurisdictional dispute with Local 555 prompted HERE International's decision to transfer 10 hotels from Local 5 to Local 555. Though at one time, a disqualifying relationship may have existed between the two Local un-

---

3. Petitioner probably intended to make this statement with reference to the Waikiki Marina hotel, not the Quality Inn. HERE International chartered Local 555 in 1974 during the controversy surrounding the voluntary recognition of a bargaining representative for the Waikiki Marina's employees. This controversy occurred well before Local 555's representation of Quality Inn's employees came into question.

ions,[4] Local 555 is not "unredeemably tainted by its history—relevant though that history may be." *National Food Stores Of Louisiana, Inc.*, 186 NLRB 127, 128 (1970). Substantial evidence supports the conclusion that at the time Quality Inn refused to bargain with Local 555, there was not a disqualifying relationship between Local 5 and Local 555.

Quality Inn's petition for review is DENIED. The NLRB's cross-petition for enforcement is GRANTED.

**4.** Anthony stipulated that until April 1979, business agents conducted common servicing and organizing for Local 5 and Local 555; that the Locals transferred bargaining units from one union to the other; that Local 555 may have used the facilities assigned to Local 5; and that Local 555 utilized some of the same support staff. We need not decide whether these entanglements, which ended well before Local 555 even petitioned to represent Quality Inn's employees, constituted a disqualifying relationship.