

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-28-2007

# NLRB v. Caswell Massey Co

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-1195

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"NLRB v. Caswell Massey Co" (2007). *2007 Decisions.* Paper 530.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/530

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 07-1195
_____

NATIONAL LABOR RELATIONS BOARD,

Petitioner

v.

CASWELL-MASSEY CO., LTD.,

Respondent

_____

On Petition for Enforcement of a Decision
and Order of the National Labor Relations Board
NLRB Nos. 22-CA-27548, 22-RC-12693

Submitted under Third Circuit LAR 34.1(a)
Thursday, May 24, 2007

Before: BARRY and CHAGARES, <u>Circuit Judges</u>,
and TASHIMA,[*] <u>Senior Circuit Judge</u>.

(Filed: August 28, 2007)

OPINION OF THE COURT
_____

_____

[*]Honorable A. Wallace Tashima, Senior Circuit Judge, United States Court of
Appeals for the Ninth Circuit, sitting by designation.

TASHIMA, <u>Senior Circuit Judge</u>.

The National Labor Relations Board ("Board") petitions for enforcement of its order directing Caswell-Massey Company ("Caswell-Massey") to cease and desist from its refusal to recognize and bargain with the United Steelworkers, AFL-CIO, United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union ("Union"). Following the Board's decision in July 2006 approving a collective bargaining unit of approximately twenty warehouse employees at Caswell-Massey's Edison, New Jersey, facility, a majority of the employees in the unit voted for the Union to represent them. In November 2006, the Board found that Caswell-Massey's subsequent refusal to bargain with and furnish information to the Union violated Sections 8(a)(1) and (5) of the National Labor Relations Act ("Act"), 29 U.S.C. §§ 158(a)(1) and (5). The only issue currently presented for our review is whether the Board acted reasonably in its initial determination of the scope of an appropriate bargaining unit at Caswell-Massey's Edison facility.

The Board had jurisdiction over this case pursuant to 29 U.S.C. § 160(a). We have jurisdiction under 29 U.S.C. § 160(e), as the allegedly unfair labor practices took place in Edison, New Jersey. We grant the petition for enforcement.

## I.

Caswell-Massey sells bath and body products through retail stores, and by way of internet, phone, and mail orders. It operates a customer fulfillment facility in Edison,

New Jersey.  The Edison facility houses both a warehouse and the company's administrative offices.  A total of 48 workers are employed there.  Of those, 20 are warehouse employees who do not qualify as statutory supervisors.  Additionally, there are 10 clerical employees working in the office area who do not qualify as supervisors or professionals under the Act.  It is these employees that Caswell-Massey believes should be included in the bargaining unit.  The clerical workers generally handle incoming customer orders, order processing, inventory, and other administrative functions.  The warehouse workers assemble, pack, and ship customer orders.

In May 2006, the Union filed a representation petition with the Board seeking certification as the exclusive collective bargaining representative of a unit consisting of the warehouse employees employed at Caswell-Massey's Edison facility.  Caswell-Massey objected, arguing that an appropriate bargaining unit had to include the facility's clerical employees.[1]

Following a hearing, the Board's Acting Regional Director found that a unit composed solely of warehouse employees was appropriate, rejecting Caswell-Massey's arguments to the contrary.  Caswell-Massey then filed a request for review, and a divided three-member panel of the Board denied the request without opinion.  The dissenting member stated that he "would grant review based on the Board's decision in Scholastic Magazines, Inc., 192 N.L.R.B. 461 (1971), which presents analogous facts."  (App. at 5.)

---

[1]Caswell-Massey also initially asserted that the unit had to include employees at two of its retail stores in New Jersey and New York, but has abandoned that argument.

3

In July 2006, the Board conducted a representation election among the unit employees. The Union won the election, and the Board duly certified the Union as the employees' collective bargaining representative. The Union then requested that Caswell-Massey furnish it with information and bargain with it. After Caswell-Massey refused to do either, the Union filed an unfair labor practice charge.

Thereafter, the Board's General Counsel issued a complaint alleging that Caswell-Massey's refusal to bargain with and furnish information to the Union violated 29 U.S.C. §§ 158(a)(1) and (5). In response, Caswell-Massey alleged that the Union was improperly certified as the employees' collective bargaining representative, due to the underlying error in the designation of the bargaining unit as limited to warehouse employees.

Refusing to reconsider its certification decision, the Board found that Caswell-Massey had engaged in unfair labor practices by refusing to bargain with or furnish information to the Union. The Board ordered Caswell-Massey to cease and desist from the unfair labor practices found in the decision, as well as any other interference with the employees' statutory rights, and to bargain with and furnish information to the Union upon request. Following issuance of its decision and order, the Board filed an application for enforcement with this Court.

## II.

Under 29 U.S.C. § 159(b), the Board is authorized to "decide in each case whether, in order to assure to employees the fullest freedom in exercising the rights guaranteed by

4

[the National Labor Relations Act], the unit appropriate for the purposes of collective

bargaining shall be the employer unit, craft unit, plant unit, or subdivision thereof." The

Board exercises broad discretion in selecting appropriate bargaining units under the

authority granted to it in § 159(b), and its "orders defining bargaining units are rarely to

be disturbed." NLRB v. Action Auto., Inc., 469 U.S. 490, 496 (1985) (citation and

internal quotation marks omitted). We will defer to the Board's decision regarding an

appropriate bargaining unit "so long as there is a rational basis for the path chosen."

NLRB v. Trump Taj Mahal Assocs., 2 F.3d 35, 39 (3d Cir. 1993). Further, there is no

requirement that the Board select "the single most appropriate unit"; the selected unit

need only be an appropriate one. St. Margaret Mem'l Hosp. v. NLRB, 991 F.2d 1146,

1152 (3d Cir. 1993) (citation, internal quotation marks, and emphasis omitted).

III.

In this case, Caswell-Massey has failed to show that the Board abused its

discretion in certifying the petitioned-for bargaining unit. In making its certification

decisions, the Board focuses on whether the workers in a proposed unit share a

"community of interest." Action Auto., 469 U.S. at 494. Here, the certification decision

was reasonable in light of the factors traditionally relied upon by the Board in making the

"community of interest" determination. The Board generally looks to factors such as:

> (1) similarity in the scale and manner of determining earnings; (2) similarity
> in employment benefits, hours of work and other terms and conditions of
> employment; (3) similarity in the kind of work performed; (4) similarity in
> the qualifications, skills and training of the employees; (5) frequency of
> contact or interchange among the employees; (6) geographic proximity; (7)

5

continuity or integration of production processes; (8) common supervision and determination of labor-relations policy; (9) relationship to the administrative organization of the employer; (10) history of collective bargaining; (11) desires of the affected employees; (12) extent of union organization.

NLRB v. St. Francis Coll., 562 F.2d 246, 249 (3d Cir. 1977) (citation omitted). In this instance, a substantial number of those factors point toward treating Caswell-Massey's clerical workers and its warehouse workers separately. The clerical workers' wages are generally higher than those of the warehouse workers, and the clerical workers are salaried, while the warehouse workers are paid at an hourly rate. The clerical workers have a different work schedule than the warehouse workers. Unlike the warehouse workers, clerical workers must have a high school degree. Contact between the employees occurs, but the workers have physically separate work spaces and take their breaks at different times and in different locations. Clerical workers and warehouse workers have quite distinct functions, though each group does play a role in the overall process of fulfilling customer orders, and the two groups have separate immediate supervisors. Given all these distinctions between the two groups, the Board's decision that the "community of interest" need not include both warehouse and clerical workers was reasonable; the bargaining unit composed solely of warehouse employees is an appropriate one.

Nor was the Board's decision in conflict with its prior decisions, contrary to Caswell-Massey's argument. In particular, Caswell-Massey relies on several cases in which the Board found a unit that excluded clerical workers to be inappropriate,

emphasizing the importance that the Board placed on the fact that the clerical employees' work in those cases was functionally integrated with that of the other employees in the bargaining unit. See In re Barbara George, Inc., 273 N.L.R.B. 1239 (1984); In re Avon Products, Inc., 250 N.L.R.B. 1479 (1980); Scholastic Magazines, 192 N.L.R.B. 461. It is true that there is some degree of functional integration of the work of Caswell-Massey's clerical employees with that of its warehouse employees; for instance, several of the clerical workers must communicate with the warehouse workers on a regular basis regarding customer orders, customer returns, and product inventory. But in each of the cases cited by Caswell-Massey, functional integration of work was not the only factor suggesting that the clerical workers necessarily shared the same community of interest as the other workers. In the cited cases, there was also a much greater coincidence in the terms and conditions of employment for the clerical employees and remaining employees in the unit than exists here.

For example, in Scholastic Magazines, the Board overruled a Regional Director's decision to exclude order processing clerks from a collective bargaining unit composed of warehouse and maintenance clerks. 192 N.L.R.B. at 462. The Board emphasized that "no substantial distinctions can be drawn between the warehouse and maintenance departments and the three processing departments with respect to wages, level of skills, supervision, benefits, and other conditions of employment." Id. Here, unlike in Scholastic Magazines, the clerical workers and other employees in the unit do not share the same job classification, do not "have approximately the same minimum and maximum

7

pay rates," do not "enjoy the same on-site cafeteria," do not "all punch a timeclock," do not all receive hourly wages, and do not have "substantially the same" skill levels. Id. These distinctions in the terms and conditions of employment, not present in Scholastic Magazines, provide sufficient reason for the Board not to have followed Scholastic Magazines in this case.

In Avon Products, the Board rejected a bargaining unit consisting mainly of production and maintenance employees. Noting that "this Employer is engaged in a single highly integrated process" of filling customer orders, 250 N.L.R.B. at 1484, the Board ruled that employees engaged in order processing, data processing, shipping, receiving, and various other departments should also be included in the bargaining unit. Id. at 1484-91. The Board pointed out that all the employees shared uniform pay scales, common working hours, access to the same cafeteria and break areas, and the ability to bid for any other job available in the facility through a well-established internal process. Id. at 1481-83. In contrast, none of that can be said of the clerical employees and warehouse employees in this case.

In Barbara George, the Board again overruled a decision finding a unit composed solely of warehouse workers to be appropriate, instead requiring that the unit comprise warehouse, order processing, and merchandising workers. 273 N.L.R.B. at 1240. The Board relied on "the highly integrated nature of the Employer's business," but it also relied on "the lack of distinction among employees as to wages, benefits, terms and conditions of employment, and skills." Id. Again, the distinctions in terms and

8

conditions of employment between the groups of workers in this case are sufficient to distinguish it from <u>Barbara George.</u>

We conclude that the Board acted reasonably in designating a bargaining unit solely of Caswell-Massey's warehouse employees, and that this decision was consistent with its past decisions. Therefore, Caswell-Massey has not carried its burden of showing that the Board abused its discretion in designating an appropriate bargaining unit. As Caswell-Massey presents no other defense to the unfair labor practice charges against it, the Board's petition for enforcement will be granted.