818 F.2d 1108
 125 L.R.R.M. (BNA) 2477, 106 Lab.Cas. P 12,360
 I.T.O. CORPORATION OF BALTIMORE, Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent.
CERES CORPORATION, Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent.
MAHER TERMINALS, INC., Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent.
MAERSK CONTAINER SERVICE CO., INC., Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent.
BALTIMORE STEVEDORING CO., INC., Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent.
STEAMSHIP TRADE ASSOCIATION OF BALTIMORE, INC., Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent.
NATIONAL LABOR RELATIONS BOARD, Petitioner,
v.
ATLANTIC & GULF STEVEDORES, INC., Chesapeake Operating
Company, John T. Clark & Sons of Maryland, Inc.,
Respondents.
 Nos. 86-3550, 86-3551, 86-3553, 86-3557 to 86-3559 and 86-3581.
 United States Court of Appeals,
Fourth Circuit.
 Argued Jan. 5, 1987.
Decided May 18, 1987.
 
 Gil A. Abramson (Elaine Patrick; Semmes, Bowen & Semmes) Paul B. Lang (Niles, Barton & Wilmer; Warren M. Davison; Littler, Mendelson, Fastiff & Tichy, Baltimore, Md., Eric A. Sisco; D. Michael Underhill, Joseph Brooks, Morgan, Lewis & Bockius, Washington, D.C., Earle K. Shawe; Eric Hemmendinger, John O. Hennegan, J. Paul Mullen, Richard A. Pearson, Lord, Whip Coughlan & Green, P.A., Baltimore, Md., William C. Miller, Rockville, Md., on brief), for petitioners and cross-respondents.
 Frederick C. Havard, N.L.R.B. (William R. Stewart, Deputy Asst. Gen. Counsel; Rosemary M. Collyer, General Counsel; John E. Higgins, Jr., Deputy General Counsel; Robert E. Allen, Associate General Counsel; Elliott Moore, Deputy Associate General Counsel, Washington, D.C., on brief, for respondent and cross-petitioner.
 Before WINTER, Chief Judge, ERVIN, Circuit Judge, and KAUFMAN, Senior United States District Judge for the District of Maryland, sitting by designation.
 FRANK A. KAUFMAN, Senior District Judge:
 Steamship Trade Association of Baltimore, Incorporated (STA) and eight of its employer-members[1] appeal from a decision of the National Labor Relations Board (Board) in which the Board concluded that STA and those employer-members had unlawfully refused to bargain with Local No. 953, International Longshoreman's Association, AFL-CIO (Union) and from the Board's Order requiring STA and those employer-members to bargain with the Union. In turn the Board has cross-appealed, petitioning this Court for enforcement of its Order.
 The members of STA are employers engaged in maritime commerce in the Port of Baltimore, Maryland. Those employers include steamship lines, steamship agents, stevedoring firms, terminal operators and service companies. Prior to 1982, STA engaged in multiemployer bargaining with the Union on behalf of its stevedore employer-members with regard to checkers, ship runners, ship planners and timekeepers. In 1982, the Union petitioned the Board to authorize the Union to represent certain clerical employees working for the stevedore employer-members of STA and to include those additional employees in the existing multiemployer bargaining unit. Following a representation hearing, the Board's Regional Director concluded that certain of the employees whom the Union sought to include in the existing unit should not be so included because they were office clericals rather than so-called plant clericals, i.e. clericals whose work was closely related to the work of checkers, ship runners, ship planners and timekeepers. On the other hand, the Director determined that several of the additional employees the Union desired to add to the existing unit were plant clericals who worked sufficiently closely with the previously covered employees within the unit so as to have an identity of interests with those already covered employees. Accordingly, the Director granted the Union's petition as to those latter employees and directed that an election be held. The Board affirmed the Regional Director's Decision and Direction of Election, although the Board did determine that STA and two of the within employer-members, Maersk Container Service Corporation and Maher Terminals, Inc., had raised substantial issues with respect to the inclusion of two employees in the voting group. However, the Board permitted those employees to vote in the election, subject to challenge. In a Board-conducted election the additional plant clerical employees elected the Union to represent them as members of the existing bargaining unit. Thereafter, the Board certified the Union as the exclusive bargaining representative for those employees. The Board subsequently concluded that the two employees who had voted in the election subject to challenge should be included in the bargaining unit.
 STA and three of the employer-members, ITO Corporation of Baltimore, Ceres Corporation, and Chesapeake Operating Company, do not employ any of the plant clerical employees so added to the existing bargaining unit. However, each of the employer-members does employ one or more persons who are represented by the Union and who are members of the existing unit.
 Prior to 1982, STA and all of the eight employer-members had consented to bargain with the Union on a multiemployer basis. The said eight employer-members had also, prior to 1982, authorized STA to bargain on their behalf as to their employees who were members of the then-existing employee bargaining unit. However, promptly after the Union, in 1982, sought to represent the additional plant clericals, the Board of Directors of STA met and agreed that STA did not have authority to bargain with the Union as to any of the plant clericals whom the Union sought in 1982 to add to the existing bargaining unit. Further, none of the eight employer-members consented in 1982 to the inclusion in the bargaining unit of the added plant clerical employees.
 After the above-related election and certification, the Union filed an unfair labor practice charge with the Board, alleging that STA and the eight employer-members had unlawfully refused to bargain with the Union regarding the plant clerical employees who had been added to the existing unit. In 1986, the Board granted summary judgment in favor of the Union and ordered STA and the employer-members herein to bargain with the Union. In so doing, the Board noted that the newly added employees shared a sufficient community of interest with the employees in the existing bargaining unit and that, since the employers had previously consented to bargain with the Union on a multiemployer basis with STA acting as their representative, the said employers were obligated to bargain with the Union with regard to the additional employees. In this Court's view, the Board, in so doing, correctly construed and applied appropriate legal principles.
 "It is axiomatic that the basis for multiemployer bargaining units is the parties' consent to be bound by group bargaining." Arden Electric Co., 275 NLRB 654, 656 (1985). That view has been approved by the Supreme Court in Charles D. Bonanno Linen Service v. NLRB, 454 U.S. 404, 412, 102 S.Ct. 720, 725, 70 L.Ed.2d 656 (1982), in which Justice White wrote:
 
 
 1
 We agree with the Board and with the Court of Appeals. The Board has recognized the voluntary nature of multiemployer bargaining. It neither forces employers into multiemployer units nor erects barriers to withdrawal prior to bargaining. At the same time, it has sought to further the utility of multiemployer bargaining as an instrument of labor peace by limiting the circumstances under which any party may unilaterally withdraw during negotiations.
 
 
 2
 There is a difference between the formation of a multiemployer bargaining unit, on the one hand, and the expansion of an already existing unit, on the other hand. Further, once a multiemployer bargaining unit is in existence, withdrawal from it is somewhat circumscribed.
 
 
 3
 Any party to a bargaining unit may withdraw prior to the date set for negotiation of a new contract or the date on which negotiations begin, provided that adequate notice is given. Once negotiations for a new contract have commenced, however, withdrawal is permitted only if there is "mutual consent" or "unusual circumstances" exist.
 
 
 4
 Charles D. Bonanno Linen Service, Inc. v. NLRB, 454 U.S. 404, 410-11, 102 S.Ct. 720, 724, 70 L.Ed.2d 656 (1982), citing with approval Retail Associates, Inc., 120 NLRB 388, 395 (1958). Thus, an impasse in bargaining does not justify unilateral withdrawal by an employer in a multiemployer bargaining unit. Id. 454 U.S. at 412-19, 102 S.Ct. at 725-29. In addition, once a multiemployer bargaining unit is in existence, each employer member of that unit is, absent a valid timely withdrawal therefrom, required to bargain with the Union with regard to all employees who have been appropriately added to the existing unit. In other words, once an employer has consented to bargain on a multiemployer basis, that employer cannot limit its consent to the original employees in the unit. Rather, it is the Board which determines the appropriate composition of the unit once that unit has been consensually created by its employer members. This is true whether or not all of the employers employ persons who become the additional employees added to the existing unit.
 
 
 5
 In Steamship Trade Association of Baltimore, Inc., 155 NLRB 232 (1965), the petitioning union which, as in this case, was Local 953, sought to include timekeepers in the existing multiemployer bargaining unit--the same unit involved herein--which then consisted of checkers, ship runners, and ship planners. The Board determined "that the timekeepers' work is integrated with that of the checkers, and that the timekeepers have a substantial community of interest with the checkers, ship runners, and ship planners who compose the existing unit." Id. at 235. The Board rejected the employers' contention that the refusal of the employer-members of STA to grant to STA authority to bargain on their behalf as to the timekeepers required the dismissal of the union's petition. In so doing, the Board wrote:
 
 
 6
 It is true that mutual consent is required to establish multiemployer bargaining. But it is clear that the element of consent relates to the formation of the multiemployer bargaining unit and not to the scope of the duty to bargain once the multiemployer unit is formed, a duty which is measured by the requirements of the Act, one of which is that bargaining must be conducted in the appropriate unit. To hold otherwise would lodge all authority over the composition of the unit in the parties and, in effect, deprive the Board of its duty under Section 9 to decide in each case the appropriate unit that will assure to employees the fullest freedom in exercising the rights guaranteed by the Act.
 
 
 7
 Id. at 234. Thus, "[t]he element of consent relates only to the formation of the multiemployer unit and not to the scope of the duty to bargain once the multiemployer unit is formed." Sacramento Automotive Association, 193 NLRB 745 (1971).[2]
 
 
 8
 The opposition of the employer-members to the inclusion of the plant clericals in the existing bargaining unit does not negate their initial consent to bargain with the unit. Because each of the said employer-members had consented to bargain with the Union as to the unit as a whole, the addition of new employees to that unit could be ordered by the Board without the consent of the employers. As long as an employer-member of the multiemployer bargaining group employs one or more members of the bargaining unit and has not validly withdrawn from the group, such an employer is required to bargain with that unit--regardless of whether such employer employs persons who are part of the newly added group. To hold otherwise would deprive the Board of its control over the employee composition of a validly formed and existing employee bargaining unit which each employer-member of the multiemployer bargaining group has recognized. Each employer-member, absent timely valid withdrawal from the employer group, is required to continue to negotiate with the union representing the employee bargaining unit, subject to the Board's appropriate exercise of discretionary control. Therefore, STA, ITO, Ceres, and Chesapeake were obligated to bargain with the Union as to the employees in the bargaining unit as a whole, including those employees added to the existing bargaining unit whether or not those employers employ any of those added employees. An employer, having granted to STA authority to bargain with the Union on its behalf as a member of the existing multiemployer bargaining unit, may not limit that authority so as to permit STA to bargain with the Union as to some employee-members of the unit but not as to other employee-members thereof. Rather, STA has both the authority and the duty to bargain with the Union on behalf of all of the employers within the multiemployer group as to all employees (of such employers) who are members of the bargaining unit with the composition of that unit to be determined appropriately by the Board. Accordingly none of the employers can limit, on a unilateral basis, the authority of STA as their designated bargaining agent to a particular group of employees within the employee bargaining unit. Steamship Trade Association of Baltimore, Inc., supra, at 234-35; Sacramento Automotive Association, supra, at 745. A contrary conclusion would impede the Board's statutory duty to determine the appropriate composition of the bargaining unit.
 
 
 9
 The Board's discretion in determining the composition of the bargaining unit is broad.
 
 
 10
 Section 9(b) of the Act vests in the Board authority to determine "the unit appropriate for the purposes of collective bargaining." 61 Stat. 143, 29 U.S.C. Sec. 159(b). The Board's discretion in this area is broad, reflecting Congress' recognition "of the need for flexibility in shaping the [bargaining] unit to the particular case." NLRB v. Hearst Publications, Inc., 322 U.S. 111, 134 [64 S.Ct. 851, 862, 88 L.Ed. 1170] (1944). The Board does not exercise this authority aimlessly; in defining bargaining units, its focus is on whether the employees share a "community of interest." See South Prairie Construction Co. v. Operating Engineers, 425 U.S. 800, 805 [96 S.Ct. 1842, 1844, 48 L.Ed.2d 382] (1976) (per curiam ); 15 NLRB Ann.Rep. 39 (1950). A cohesive unit--one relatively free of conflicts of interest--serves the Act's purpose of effective collective bargaining, Pittsburgh Plate Glass Co. v. NLRB, 313 U.S. 146, 165 [61 S.Ct. 908, 918, 85 L.Ed. 1251] (1941), and prevents a minority interest group from being submerged in an overly large unit, Chemical Workers v. Pittsburgh Plate Glass Co., 404 U.S. 157, 172-173 [92 S.Ct. 383, 393-394, 30 L.Ed.2d 341] (1971).
 
 
 11
 National Labor Relations Board v. Action Automotive, Inc., 469 U.S. 490, 494, 105 S.Ct. 984, 987, 83 L.Ed.2d 986 (1985).
 
 
 12
 Although no single factor is conclusive in determining whether the employees share such community of interests, relevant factors include:
 
 
 13
 "(1) similarity in the scale and manner of determining the earnings; (2) similarity in employment benefits, hours of work and other terms and conditions of employment; (3) similarity in the kind of work performed; (4) similarity in the qualifications, skills and training of the employees; (5) frequency of contact or interchange among the employees; (6) geographic proximity; (7) continuity or integration of production processes; (8) common supervision and determination of labor-relations policy; (9) relationship to the administrative organization of the employer; (10) history of collective bargaining; (11) desires of the affected employees; (12) extent of union organization."
 
 
 14
 National Labor Relations Board v. Saint Francis College, 562 F.2d 246, 249 (3rd Cir.1977) quoting R. Gorman, Labor Law: Unionization and Collective Bargaining 69 (1976).
 
 
 15
 In the within case the employees who were added to the existing bargaining unit perform functions within the chain of handling cargo in the Port of Baltimore as do the employees who were members of the previously existing bargaining unit. The jobs of the employees added to the unit require them to be in contact with the checkers, and sometimes with other members of the previously existing employee bargaining unit, regarding customs openings, payment for cargo, demurrage, documents, appointments, and other problems arising during the course of their work. Additionally some of the newly added employees are supervised by the same persons who supervise employees who are members of the previously existing employee bargaining unit. Also, several of the newly added employees share a specific common working area with members of the previously existing bargaining unit. Although certain of the relevant factors, such as similarity of wages, were seemingly absent as to some if not all of the added employees, there is substantial evidence in the administrative record to support the Regional Director's conclusion, which was affirmed by the Board, that the added employees share a sufficient community of interest with the employees in the existing bargaining unit to support the Board's decision adding them to the employee bargaining unit. The frequency of contact between the added employees and those already in the previously existing bargaining unit, the integration of the work of the added employees with the work of those already in the previously existing unit, and the desire of the added employees to be part of that unit indicate that the interests of the added employees are sufficiently similar to the interests of the employees in that unit so as to permit the Board to order their inclusion therein.
 
 
 16
 AFFIRMED AND ENFORCEMENT GRANTED.
 
 
 
 [1]
 Those eight employer-members are the following stevedoring firms: I.T.O. Corporation of Baltimore; Ceres Corporation; Maher Terminals, Inc.; Baltimore Stevedoring Company, Inc.; Maersk Container Service Corporation; Atlantic and Gulf Stevedores; Chesapeake Operating Company; and John T. Clark & Son of Maryland
 
 
 [2]
 Cf. National Dairy Products Corp., 127 NLRB 313 (1960), which predates the Board's 1965 decision in Steamship Trade Association of Baltimore, and in which the single employer was not required by the Board to bargain as to employees whose employment had been terminated by the employer for "economic considerations ... totally unrelated to the union activities or membership" of the employees involved. Id. at 314