40 F.3d 1243
 147 L.R.R.M. (BNA) 2384
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
COMARCO, INCORPORATED, Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD; INTERNATIONAL BROTHERHOODOF
TEAMSTERS, Local 848, Respondents.
NATIONAL LABOR RELATIONS BOARD, Petitioner,
v.
COMARCO, INCORPORATED, Respondent.
 Nos. 93-2397, 93-2469.
 United States Court of Appeals, Fourth Circuit.
 Argued: May 10, 1994.
Decided: September 23, 1994.
 
 On Petition for Review and Cross-application for Enforcement of
 Kenneth B. Stark, Duvin, Cahn, Barnard & Messerman, Cleveland, Ohio, for Petitioner. Joseph Anthony Oertel, Senior Litigation Attorney, National Labor Relations Board, Washington, D.C., for Respondents.
 Stephen J. Sferra, Duvin, Cahn, Barnard & Messerman, Cleveland, Ohio, for Petitioner.
 Daniel Silverman, Acting General Counsel, Linda Sher, Acting Associate General Counsel, Aileen A. Armstrong, Deputy Associate General Counsel, Howard E. Perlstein, Supervisory Attorney, National Labor Relations Board, Washington, D.C., for Respondents.
 
 
 1
 N.L.R.B.
 
 
 2
 PETITION DENIED AND ENFORCEMENT GRANTED.
 
 
 3
 Before ERVIN, Chief Judge, MICHAEL, United States District
 
 OPINION
 PER CURIAM:
 
 4
 In November, 1992, the Wholesale Delivery Drivers, Salespersons, Industrial and Allied Workers, Local 848, International Brotherhood of Teamsters, AFL-CIO ("Union") petitioned the National Labor Relations Board ("Board") to conduct a representation election for the service workers of Comarco, Inc. employed at the five general aviation airports operated by Comarco under agreement with Los Angeles County, California. The Board conducted a representation hearing on November 24, 1992 to address the issue of the appropriate bargaining unit. Based on the record developed at the hearing, the Board's Acting Regional Director issued a Decision and Direction of Election on December 11, 1992, determining that a single five-airport unit was appropriate. Comarco petitioned the Board for review, arguing that the appropriate units are five individual single-facility units consisting of each airport. The Board denied Comarco's request for review on January 22, 1993.
 
 
 5
 On June 22, 1993 following representation elections, the Board certified the Union as the exclusive representative of the single designated bargaining unit consisting of service employees at the five airports. Comarco refused to bargain with the Union on July 7, 1993, stating that it objects to the designation of the five-airport bargaining unit.
 
 
 6
 The Board's General Counsel issued a complaint on August 6, 1993, alleging that Comarco violated the National Labor Relations Act ("Act") Secs. 8(a)(5) and (1), 29 U.S.C. Sec. 158(a)(5) and (1). Comarco answered that its refusal to bargain was lawful because the bargaining unit is inappropriate. The Board issued a Decision and Order on October 29, 1993 (the "Decision") granting summary judgment in favor of the General Counsel. The Board found that all Comarco's objections could have been litigated in the prior November 24, 1992 representation proceeding and no new evidence or special circumstances required the Board to reconsider representation. The Decision requires Comarco to bargain with the Union, to provide relevant information to the Union, to post an appropriate notice, and to cease and desist from violating the Act. Comarco petitions this court to deny enforcement of and set aside the Decision. The Board crosspetitions for enforcement of its Decision.
 
 
 7
 This court has jurisdiction to hear Comarco's Petition for Review of the Board's Decision pursuant to 29 U.S.C. Sec. 160(f). Comarco's Airport Services Division has its principal place of business, and therefore transacts business, in Arlington, Virginia so that venue is proper in this court. For the reasons set forth below, we deny Comarco's petition for review and grant the Board's application for enforcement.
 
 I.
 
 8
 Comarco is a California corporation with its principal offices located in Anaheim, California. Comarco's Airport Services Division has its principal place of business in Arlington, Virginia. In April 1991, Comarco entered into a contract with Los Angeles County, California to maintain and operate the five airports located in and owned by the county. The airports include Brackett Airport in La Verne, Compton Airport in Compton, El Monte Airport in El Monte, Fox Field in Lancaster, and Whiteman Airport in Pacoima. The distance from Brackett Airport to the other airports is 25, 40, 47 and 115 miles, respectively.
 
 
 9
 The contract is managed by a project director, a project manager, and a deputy project manager, all located at Brackett Airport. These division-level managers hire five airport managers and three relief airport managers to supervise day-to-day activities at the airports. The relief airport managers work at more than one airport. The five airports employ a total of 49 full and part time service workers, with employment at each airport ranging from 6 to 12 employees. The parties stipulated that the workers at all the airports share similar wages, hours, working conditions, and supervision. Since April 1, 1991, three employees have been permanently transferred from one airport to another.
 
 
 10
 Comarco is required by contract to maintain the buildings and grounds, lease the hangars, sell fuel and otherwise operate the airports in a safe and efficient manner 24 hours a day. Based on a formula set forth in the contract, Comarco shares the revenue it receives from selling fuel and leasing hangars with the county. Each airport uses the same formula.
 
 
 11
 The division-level managers have overall responsibility for managing the project. Comarco's corporate office establishes uniform policies for all service workers regarding starting wages, the 90-day probationary period, quarterly bonuses and service awards. The corporate office issues an employee handbook setting forth the conditions of employment that each employee receives, signing an acknowledgment of such receipt. The division office determines the health and life insurance, pension benefits, vacation, personal leave and illness policies that are applied uniformly to service workers at all the airports. The corporate and division offices require each airport manager to provide safety training. A service worker at each airport is designated as safety officer and meets on a regular basis with the project manager and other safety officers to discuss safety issues. The division office sets the budget for the airports, which guides and limits the airport managers' ability to give pay increases to service workers.
 
 
 12
 The airport managers are responsible for the day-to-day operations of the facilities. They determine how many full and part time workers are needed, subject to minimums set in the contract. Each manager hires and fires service workers at his or her airport, in accordance with the probationary wage and status requirements set by the division. Hiring freezes are sometimes required by the division-level management. The airport manager sets employees' schedules and, within division budgetary constraints, is responsible for determining pay increases. The airport manager also devises training methods to fit within the requirements of the division.
 
 II.
 
 13
 Comarco argues that because the day-to-day operations of each airport are managed independently, each airport should be an independent bargaining unit. The Board's determination of the bargaining unit is reviewed for abuse of discretion. As this court has noted,
 
 
 14
 the Supreme Court has long subscribed to the view that the Board is possessed of the widest possible discretion in determining the appropriate unit. "The issue as to what unit is appropriate for bargaining ... involves of necessity a large measure of informed discretion, and the decision of the Board, if not final, is rarely to be disturbed." Packard Motor Car Co. v. NLRB, 330 U.S. 485, 491 (1947).
 
 
 15
 Arcadian Shores, Inc. v. NLRB, 580 F.2d 118, 119 (4th Cir.1978). The Supreme Court has decided that review is limited to whether the Board's decision has a reasonable basis in law. NLRB v. Action Automotive, Inc., 469 U.S. 490, 495-96 (1985). "In reviewing Board decisions, we consistently yield to the Board's reasonable interpretations and applications of the Act.... We do not require mathematical precision, and are not prepared to second-guess the Board's informed judgment...." Id. at 496-97 (internal quotations omitted). It is clear that "a decision of the Board as to the appropriate unit cannot be disturbed unless the Board exercises the power conferred on it in an arbitrary and unreasonable manner." NLRB v. Williams, 195 F.2d 669, 671 (4th Cir.), cert. denied, 344 U.S. 834 (1952). If there is substantial evidence in the record to support the Board's decision, "our inquiry ends and its order must be enforced even though we might have reached a different result had we heard the evidence in the first instance." NLRB v. Daniel Constr. Co., 731 F.2d 191, 193 (4th Cir.1984) (citing Universal Camera Corp. v. NLRB, 340 U.S. 474 (1951)). The employer has the difficult burden of demonstrating an abuse of the broad discretion accorded the Board. Fair Oaks Anesthesia Assoc., P.C. v. NLRB, 975 F.2d 1068, 1071 (4th Cir.1992). The Board's decision must be "utterly inappropriate" before it will be set aside. Arcadian Shores, 580 F.2d at 120.
 
 
 16
 In defining bargaining units, the Board's "focus is on whether the employees share a 'community of interest.' " Action Automotive, 469 U.S. at 494 (quoting South Prairie Construction Co. v. Operating Engineers, 425 U.S. 800, 805 (1976)). This court has held that, although no single factor is conclusive in determining whether the employees share such community of interests, relevant factors include:
 
 
 17
 (1) similarity in the scale and manner of determining the earnings; (2) similarity in employment benefits, hours of work and other terms and conditions of employment; (3)similarity in the kind of work performed; (4) similarity in the qualifications, skills and training of the employees; (5)frequency of contact or interchange among the employees; (6)geographic proximity; (7) continuity or integration of production processes; (8) common supervision and determination of labor-relations policy; (9) relationship to the administrative organization of the employer; (10) history of collective bargaining; (11) desires of the affected employees; and (12) extent of union organization. NLRB v. Saint Francis College, 562 F.2d 246, 249 (3rd Cir.1977), quoting, R. Gorman, Labor Law: Unionization and Collective Bargaining 69 (1976).
 
 
 18
 I.T.O. Corp. of Baltimore v. NLRB, 818 F.2d 1108, 1113 (4th Cir.1987). Although that case was decided in the context of adding employees to a predetermined multiemployer bargaining unit, the noted factors relate to determining community of interest in any context.
 
 
 19
 It is well established that "there may be more than one appropriate bargaining unit within the confines of a single employment unit and that the Board is free to select any one of these appropriate units as the bargaining unit." Arcadian Shores, 580 F.2d at 119.
 
 
 20
 Comarco argues that a single-facility unit is presumptively appropriate. That presumption arises where the unit petitioned for is a single-facility unit and the company contests the unit, preferring a larger unit. Spring City Knitting Co. v. NLRB, 647 F.2d 1011 (9th Cir.1981). The Board's presumption makes it unnecessary for a union to prove that a single-unit facility is appropriate. However, "where, as here, the union requests and the Board designates a multi-location unit as appropriate, the presumption simply has no application." NLRB v. Carson Cable TV, 795 F.2d 879, 887 (9th Cir.1986).
 
 
 21
 Comarco further argues that the Board's determination is impermissibly based on the extent of union organization. Section 9(b) of the Act provides:
 
 
 22
 The Board shall decide in each case whether, in order to assure to employees the fullest freedom in exercising the rights guaranteed by this subchapter, the unit appropriate for the purposes of collective bargaining shall be the employer unit, craft unit, plant unit, or subdivision thereof....
 
 
 23
 29 U.S.C. Sec. 159(b). The Act was amended bySec. 9(c)(5) to limit that determination, providing that "in determining whether a unit is appropriate for the purposes specified in subsection (b) of this section, the extent to which the employees have organized shall not be controlling." 29 U.S.C. Sec. 1959(c)(5). The Supreme Court has determined that "the provision was not intended to prohibit the Board from considering the extent of organization as one factor, though not the controlling factor, in its unit determination." NLRB v. Metropolitan Life Ins. Co., 380 U.S. 438, 442 (1965). Here, the Board determined that there was substantial evidence, apart from the extent of organization, upon which to find a community of interest among all the service workers.
 
 
 24
 The Board specifically found that the record of the November 24, 1992 representation hearing discloses that employees at the five airports share a community of interests. J.A. 96. The parties stipulated that the service workers share similar wages, hours, working conditions, supervision and a community of interest. J.A. 20.* The record discloses that while each facility exercises some degree of autonomy through its respective airport manager, overall responsibility of the facilities rests with division-level management. J.A. 92. Corporate policy requires managers to provide training for their workers. Workers are required by corporate policy to sign for an employee handbook. Managers' recommendations for pay increases are subject to budgetary limitations and division management has denied wage increases for budgetary reasons. All service employees enjoy the same health and life insurance plans and vacation and pension benefits; the probationary periods, employee awards and starting wages are uniformly established at the corporate level. Employees possess the same skills and functions and provide the same services to tenants. Managers' supervision of daily operations is circumscribed by labor relations policy emanating from the corporate level.
 
 
 25
 From these factors, among others, the Board concluded that the petitioned-for unit, a five airport multi-facility unit, was not demonstrated to be inappropriate. The Board therefore certified that unit as the exclusive bargaining representative of the service workers. The Board made sufficient findings to support its determination. Because these findings, which implicitly take into consideration the factors listed in I.T.O. Corp., do not amount to an abuse of discretion, the Board properly determined that the employees at all five airports share a community of interest sufficient to warrant a bargaining unit of that scope.
 
 III.
 
 26
 For the reasons set forth above, Comarco's petition for review is denied and the Board's application for enforcement is granted.
 
 PETITION DENIED AND ENFORCEMENT GRANTED
 
 
 *
 It should be noted, however, that the company made this stipulation in the context of determining which employees would be included in the unit, i.e. service workers; it did not stipulate that the five airport unit was appropriate